1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT**

10

**DISTRICT OF NEVADA**

11
12

| | |
|---|---|
| RONA TARRAB, | CASE NO.: 2:09-cv-00786-KJD-RJJ |
|            Plaintiff, | **ORDER GRANTING DEFENDANTS HSBC MORTGAGE SERVICES, HOUSEKEY FINANCE REALTY CORPORATION OF NEVADA AND HOUSEKEY FINANCIAL CORPORATION'S MOTION TO DISMISS COMPLAINT WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| HSBC MORTGAGE SERVICES, HOUSEHOLD FINANCE REALTY CORPORATION OF NEVADA, HOUSEKEY FINANCIAL CORPORATION, and DOES 1-X, Inclusive, | |
|            Defendants. | |

13
14
15
16
17
18
19
20
21

     On May 9, 2009,  Defendants HSBC Mortgage Services ("HSBC"), Household Finance

22

Realty Corporation of Nevada ("Household") and Housekey Financial Corporation ("Housekey")

23

(collectively referred to as "Defendants"), filed their Motion to Dismiss Plaintiff's Complaint

24

with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment

25

under Fed. R. Civ. P. 56.  Plaintiff failed to file any response in opposition to Defendants' Motion

26

to Dismiss and on July 1, 2009, the Court issued a Minute Order in Chambers ordering

27

Defendants to submit a proposed order granting the Motion to Dismiss with findings of fact and

28

conclusions of law as well as language extinguishing any lis pendens justified by the pending

1  litigation.   Therefore, having considered Defendants' Motion to Dismiss, and for good cause

2  appearing pursuant to FRCP 12(b)(6), this Court hereby enters the following Order granting

3  Defendants' Motion to Dismiss with findings of fact and conclusions of law and extinguishing the

4  lis pendens filed in connection with this pending litigation.

5  **I.       FINDINGS OF FACT**

6          In May of 2006, Plaintiff obtained an adjustable rate mortgage from Accredited Home

7  Lenders ("Accredited") in the amount of $224,000.00 to finance the purchase of the property

8  located at 7487 Ringquist Street, Las Vegas, Nevada 89148, APN: 176-08-113-013 (the

9  "Property"), a second home, as reflected in a deed of trust recorded on May 22, 2006.  At the

10  same time, Plaintiff obtained a second mortgage from Accredited in the amount of $56,000.00 to

11  finance their purchase of the Property, as reflected in a deed of trust recorded on May 22, 2006.

12          Accredited assigned the Accredited Deed of Trust to HSBC as permitted by paragraph 20

13  of the Accredited Deed of Trust ("The Note or a partial interest in the Note (together with this

14  Security Instrument) can be sold one or more times without prior notice") and as reflected in the

15  Substitution of Trustee, which appointed Housekey as Trustee, recorded on October 6, 2008.

16  None of the Defendants are named in any original deed of trust encumbering the Property.  The

17  Accredited Deed of Trust and Second Deed of Trust specifically provided that upon default the

18  lender/beneficiary possessed the right of acceleration and sale at a public trustee's sale in

19  accordance with the terms of the deed of trust and applicable law, and further provided terms for

20  a change in the beneficiary.

21          Plaintiff defaulted on her loan obligations, and a Notice of Trustees' Sale was recorded

22  with the Clark County Recorder's Office.  On March 16, 2009, Plaintiff filed suit against

23  Defendants in the Eighth Judicial District Court for Clark County, Nevada, which included the

24  following claims for relief: (1) Unfair Lending Practices Against All Defendants; (2) Suitability;

25  (3) Negligence; (4) Negligence Per Se; (5) Breach of Fiduciary Duty; (6) Negligent

26  Misrepresentation; (7) Intentional Misrepresentation; (8) Breach of the Covenant of Good Faith

27  and Fair Dealing; and (9) Wrongful Foreclosure Against All Defendants.  After being served,

28  Defendants removed to federal court based upon diversity jurisdiction.

**II.**     **CONCLUSIONS OF LAW**

    **a.**     **Standard**

Nevada LR-7-2 provides in pertinent part that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." However, failure to file an opposition to a motion to dismiss is not cause for automatic dismissal. *See Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). Before dismissing the action, the district court is required to weigh (1) the public's interest in expeditious resolution; (2) the court's need to manage its docket; (3) the risk of prejudice; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Id.* (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).

In this case, these factors weigh toward dismissal. The public's interest in expeditious resolution of litigation, the court's need to manage its docket, and the lack of prejudice weigh in favor of granting Defendants' Motion to Dismiss. Additionally, the motion itself has substantial merit.

Rule 12(b) of the Federal Rules of Civil Procedure provides in pertinent part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … (6) failure to state a claim upon which relief can be granted;

The recent U.S. Supreme Court case of *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) (hereinafter "*Twombly*") clarified the standard for dismissal under Fed. R. Civ. P. 12(b)(6). For some time, Courts have denied motions to dismiss for failure to state a claim upon which relief may be granted unless the moving party shows, beyond a doubt, that plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. This standard was first articulated by the U.S. Supreme Court in *Connolly v. Gibson*, 355 U.S. 41, 45-46 (1957). However, this standard was recently expressly abolished in *Twombly*, wherein the Court announced "there is no need to pile up further citations to show that Connolly's 'no set of facts' language has been questioned, criticized, and explained away long enough." *Twombly*, 127 S.CT. 1955, 1969 (2007).

1    Under *Twombly*, "a plaintiff's obligation to provide the grounds of his entitlement for

2  relief requires more than labels and conclusions, and a formulaic recitation of the elements of the

3  cause of action will not do." *Id.* at 1964-65 *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986).

4  To survive a motion to dismiss, "factual allegations must be enough to raise the right to relief

5  above the speculative level." *Id.* at 1965.  Courts considering a motion to dismiss should not

6  allow defective pleadings to waste judicial resources.  The *Twombly* court stressed this policy

7  stating "this basic deficiency should be exposed at the point of minimum expenditure of time and

8  money by the parties and the court." *Id.* at 1966.  In the case at hand, Plaintiff's allegations do

9  not state a claim for relief against Defendants, and the claims included in the Complaint fail as a

10  matter of law.

11         **b.**     **Plaintiff Failed To State A Claim For Relief Against Defendants**

12              i.    Plaintiff's Claim for Unfair Lending Practices Fails as a Matter of Law

13    Plaintiff has failed to articulate an actionable claim for "unfair trade practices."

14  According to Plaintiff, an unspecified "Defendant" engaged in an "unfair trade practice" in

15  violation of NRS 598D. *See* Compl. at ¶ 13.  However, Plaintiff has failed to allege any facts that

16  support a foundation for relief under NRS Chapter 598D.  The Complaint states that "Defendants

17  knowingly or intentionally misrepresented this loan to Plaintiffs without determining, using

18  reasonable means or mechanism, that the Plaintiffs had the ability to repay the loans." *Id.* at ¶ 14.

19  Plaintiff's claim for relief against Defendants must be dismissed as none of the defendants

20  originated the loan at issue in this case and Plaintiff is not entitled to an unwinding of the

21  foreclosure sale to Household.  In addition, Plaintiff has relied upon language that was not in

22  effect when Plaintiff agreed to obtain financing in May 2006.  Under the pre-amendment version

23  of NRS Chapter 598D, Plaintiffs' loan is a purchase-money mortgage securing the Plaintiffs'

24  second home.

25              *1.*    *Defendants did not make a "home loan" to Plaintiffs*

26    Accredited originated Plaintiff's home loan, and none of the Defendants had any part of

27  the loan that is the subject of the Complaint and, therefore, Plaintiff has failed to state a claim

28  upon which relief may be granted as to these Defendants.  Nonetheless, Plaintiff seeks relief for

- 4 -

conduct alleged to have occurred in connection with the making of a "home loan" as defined

under NRS Chapter 598D.100(1)(b).  Notwithstanding Plaintiffs generalized allegations and

unspecified references to "Defendants," Housekey has merely acted as trustee and HSBC

assumed its interest as a beneficiary under the Deed of Trust on October 6, 2008 — almost 2

years after Plaintiff obtained a "home loan" within the meaning of NRS Chapter 598D.

Furthermore, Household simply purchased the loan at a foreclosure sale.  Plaintiff cannot allege

that any Defendants "[k]nowingly or intentionally ma[d]e a home loan" in violation of NRS

Chapter 598D.  Plaintiff's claims for unfair lending is dismissed.

> 2.  *Plaintiff Relies Incorrectly on NRS Chapter 598D as Amended in 2007*

Plaintiff's unfair lending claim must be dismissed because in May 2006 Plaintiff did not

obtain a non-purchase money loan secured by their primary residence.  The Nevada Legislature

adopted Assembly Bill 440 during the 2007 session which amended NRS Chapter 598D, effective

October 1, 2007, to redefine the scope of "home loan[s]" subject to it provisions.  *See* A.B. 440,

Section 2, 2007 Stat. Nev. 2846, 2007 Sess. (Nev. 2007) ("*AB 440*").  The definition of "home

loan" in the pre-amendment version of NRS 598D.040 was as follows:

> a consumer credit transaction that is secured by a mortgage loan which involves real property located within this State and constitutes a mortgage under § 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1602(aa) {"HOEPA"}, and the regulations adopted by the Board of Governors of the Federal Reserve System {the "Federal Reserve"} pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

In other words, the pre-amendment version of NRS Chapter 598D regulated only those home

loans subject to regulation under HOEPA.  The Federal Reserve has described such loans as

> closed-end, non-purchase money mortgages secured by a consumer's principal dwelling (other than a reverse mortgage) where either: (a) The APR at consummation will exceed the yield on Treasury securities of comparable maturity by more than 8 percentage points for first-lien loans, or 10 percentage points for subordinate-lien loans; or (b) the total points and fees payable by the consumer at or before closing exceed the greater of 8 percent of the total loan amount, or $547 for 2007 (adjusted annually).

Truth in Lending; Final Rule, 73 Fed. Reg. 44522, 44527, n.20 (Jul. 30, 2008).  *See also*

15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32.

1     The statute as amended lacks any clear references to its retroactive application.  Absent

2 any clear legislative intent to the contrary, the amended language of NRS Section 598D.110(1)(b)

3 does not apply to the loan that Plaintiffs obtained in May 2006.

4     The unfair lending claim should be dismissed because Plaintiff has failed to make any

5 allegations that she obtained a loan in May 2006 that was a "home loan" within the meaning of

6 NRS Chapter 598D as in effect at the time of financing.  As admitted by Plaintiff, the Deed of

7 Trust secured loan proceeds used to finance the purchase of the Property.  *See* Compl. ¶ 8.  On

8 this basis alone, the unfair lending claim must be dismissed because the home loan relating to the

9 Property is not subject to NRS Chapter 598D as in effect at the time of the financing.

10     Plaintiff's Complaint, furthermore, does not allege conduct constituting an unfair lending

11 practice.  Among the various amendments set forth in AB 440, the Nevada Legislature removed

12 an element from the definition of unfair lending practices in NRS Section 598D.100(1)(b).  Prior

13 to October 1, 2007, NRS 598D.100(1)(b) stated that "[i]t is an unfair lending practice for a lender

14 to…[k]nowingly or intentionally make a home loan, to a borrower *based solely upon the equity of*

15 *the borrower in the home property and without determining that the borrower has the ability to*

16 *repay the home loan* from other assets, including, without limitation, income."  (Emphasis

17 added.)  Plaintiffs fail to properly plead the elements of unfair lending practices based upon the

18 pre-October 2007 version of the statute.  In particular, the Complaint lacks any allegations that

19 any Defendant extended credit to Plaintiff based solely upon the equity in the Property.

20         ii.    Plaintiff's Suitability Claim is Inapplicable

21     Notwithstanding the fact that none of the Defendants acted as the original lender in this

22 case, Plaintiff's suitability theory has long been rejected in the securities setting in the Ninth

23 Circuit, and has no applicability here.  The suitability claim must be dismissed.

24     When securities dealers recommend the purchase of a security, they are required to have

25 "reasonable grounds for believing that the recommendation is suitable for such customer upon the

26 basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his

27 financial situation and needs."  FINRA Manual, NASD Rule 2310, available at:

28 http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=3637.  In the

1  past, plaintiffs have utilized this rule as a basis for bringing a cause of action for "suitability" or

2  "unsuitability".  *See* Eunice A. Eichelberger, J.D., Annotation: <u>Private federal right of action</u>

3  <u>against brokerage firm for violation of Exchange or Dealer Association Rule</u>, 54 ALR. 11 (1981)

4  ("Eichelberger Annotation").   However, the Ninth Circuit, and many other jurisdictions, has held

5  that a purported violation of this rule does not confer a private cause of action.  *See Wells v Blythe*

6  *& Co.*, 351 F Supp 999 (N.D.Cal. 1972); *see also* Eichelberger Annotation.

7       Plaintiff's purported claim, grounded in the securities context and the rules for purchase of

8  securities, is inapplicable in the context of a real estate lending relationship and, moreover, the

9  suitability theory, in any event, does not create a private right of action.  This claim is therefore

10  dismissed.

11            iii.     <u>Plaintiff Fails To State A Claim For Negligence</u>

12       Plaintiff must allege, to sufficiently plead a negligence claim, that (1) Defendants owed

13  Plaintiff a duty of care, (2) that Defendants breached that duty, (3) that the breach was the legal

14  and proximate cause of Plaintiff's injury, and (4) that the Plaintiff suffered damages.  *See*

15  *Hammerstein v. Jean Dev. West*, 111 Nev. 1471, 1475, 907 P.2d 975, 977 (1995).

16            *1.     Defendants owed no duty of care giving rise to Plaintiff's claims*

17       Plaintiff alleges that Defendants owed Plaintiffs (i) a duty to place Plaintiff's interests

18  above the Defendants, (ii) a duty to deal honestly with Plaintiff, (iii) a duty to deal "directly" with

19  Plaintiff and (iv) a duty to deal "accurately" with Plaintiff.  *See* Compl. at ¶ 19 (second).

20       Even assuming that Defendants had acted in any part during the original financing of the

21  Property, a financial institution does not owe a duty of care to a borrower when the lender's

22  involvement in the loan transaction does not exceed the scope of its conventional role as a lender

23  of money.  *See Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal.App.3d 1089, 1096, 283 Cal.

24  Rptr. 53, 56 (1991).   The lender is under no duty to ensure the success of the borrower's

25  investment.  *See Wagner*, 101 Cal. App.3d 27, 34, 161 Cal. Rptr. 516, 521 (1980).  "Liability to a

26  borrower for negligence arises only when the lender 'actively participates' in the financed

27  enterprise 'beyond the domain of the usual money lender.'"  <u>Id.</u> at 35, 161 Cal. Rptr. at 521

28  (*quoting Connor v. Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 864, 73 Cal. Rptr. 369, 376

1    (1968)).

2            Plaintiff's Complaint cannot claim that any of the Defendants were actively involved in

3    the success of the financed enterprise – the Property.  While Plaintiff alleges that HSBC financed

4    the purchase of the Property, the recorded documents reveal that it was an entirely unrelated, and

5    unnamed lender that completed the transaction.  The allegations against the remaining Defendants

6    are similarly without merit, and in no way create any of the duties Plaintiff identifies in the

7    Complaint.  Plaintiff's negligence cause of action must be dismissed because the alleged duties do

8    not exist under the law and the alleged facts do not establish a foundation for any duties

9    recognized under the law.

10                      *2.       Plaintiff's claims are barred by the economic loss doctrine*

11           Even if Plaintiff could properly plead the elements of a negligence cause of action, this

12   claim is barred by the economic loss doctrine, which precludes recovery in tort for purely

13   economic losses arising out of the breach of the contract.  *See Calloway v. City of Reno*, 116 Nev.

14   250, 993 P.2d 1259 (2000).  Recovery for negligence in a contract dispute is barred by the

15   economic loss doctrine.  This Court has recognized that Nevada's economic loss doctrine would

16   apply in the lender-borrower context.  *See Yerington Ford, Inc. v. General Motors Acceptance*

17   *Corp.*, 359 F. Supp.2d 1075, 1090 (D.Nev. 2004) ("Nevada applies the economic loss doctrine to

18   bar recovery in tort for purely monetary harm in product liability and negligence cases unrelated

19   to product liability.") (compiling cases) (*overruled on other grounds sub. nom. Giles v. General*

20   *Motors Acceptance Corp.*, 494 F.3d 865 (2007)).  The economic loss doctrine bars Plaintiff's

21   negligence claim, requiring the dismissal of Plaintiff's negligence claim.

22           iv.      Plaintiff's Claim For Negligence Per Se Fails As A Matter Of Law

23                      *1.       Plaintiff failed to adequately plead her negligence per se claim*

24           Plaintiff's Complaint fails to provide a factual basis supporting her claim for relief under a

25   negligence per se theory.  Rather, after reciting, without factual support and analysis, the elements

26   necessary to demonstrate that a statute creates a negligence per se claim, Plaintiff asserts that

27   "[t]he Defendants violated the Statutes and Codes enumerated at NRS 645B.460 *et seq.* and

28   598D.100 *et seq.* and Federal Regulations such as RESPA and Truth in Lending, etc."  *See*

Compl. at ¶ 22.

Plaintiff failed to state a negligence per se claim because she does not identify which statutes the individual Defendants allegedly breached. Plaintiff vaguely couches conclusions as allegations that Defendants breached various statutory schemes. Even though Plaintiff alleges "Defendants violated NRS 645B.460 *et seq.,* NRS 598D.100 *et seq.*, and Federal Regulations such as RESPA, Truth in Lending, etc.," she fails to identify which specific provisions Defendants allegedly violated. Plaintiff's failure to identify specific statutory violations is fatal to her negligence per se claim. *See Holler v. Cinemark USA, Inc.*, 185 F. Supp.2d 1242, 1243-44 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence per se.") (add'l citations omitted).

2.      *Chapter 645B of Nevada Revised Statutes does not apply to Defendants*

Even if Plaintiff is not required to allege specifically which statutes have been violated and how, Chapter 645B does not apply to Defendants. The provisions of Chapter 645B do not apply to:

> Any person doing business under the laws of this State, any other state or the United States relating to banks, savings banks, trust companies, savings and loan associations, consumer finance companies, industrial loan companies, credit unions, thrift companies or insurance companies, including, without limitation, a subsidiary or a holding company of such a bank, company, association or union.

NRS 645B.016(1).

Had Plaintiff properly pleaded a negligence per se claim, relief would nevertheless be unavailable because Defendants cannot be held liable for a claim under the provisions of NRS 645B.460 *et seq. See* Compl. at ¶ 22.

3.      *Plaintiff's Truth in Lending Allegations are time barred*

Under the federal Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), actions for damages may only be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Plaintiff financed through Accredited in 2006, more than one year ago, *see* Exhibits B and C, which is the time at which Accredited would have been required to provide all

the applicable TILA disclosures.  As Accredited is not a party to this action and none of the

Defendants were involved with the original loan transaction, this claim is dismissed.

### 4. The Real Estate Settlement Procedures Act does not create a private cause of action

Plaintiff cannot bring a claim under the provisions of the Real Estate Settlement

Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), because it does not create a private cause

of action for failure to comply with its terms.  *See Collins v. FMHA-USDA*, 105 F.3d 1366, 1368

(11th Cir. 1997) (finding no private cause of action under 12 U.S.C. § 2604 -- requiring that

information booklets and good-faith estimate of charges for specific settlement services be

provided)(*cited in Sturm v. People's Trust and Sav. Bank*, 713 N.W. 2d 1 (Iowa 2006) (finding no

private cause of action under 12 U.S.C § 2603 – requiring use and disclosure of "HUD-1" form));

*Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1301-02 (5th Cir. 1995) (finding no private right

of action under 12 U.S.C. § 2609 -- limitation on advance deposit requirements); *Allison v.

Liberty Sav.*, 695 F.2d 1086, 1089 (7th Cir. 1982) (finding no private right of action under 12

U.S.C. § 2609); *Bloom v. Martin*, 865 F. Supp. 1377, 1385 (N.D. Cal. 1994) (finding no private

cause of action under 12 U.S.C. § 2603), *aff'd on other grounds*, 77 F.3d 318, 320-21 (9th Cir.

1996); *Campbell v. Machias Sav. Bank*, 865 F. Supp. 26, 31 (D. Me. 1994) (finding no implied

cause of action under 12 U.S.C. § 2609); *Bergkamp v. N.Y. Guardian Mortgagee Corp.*, 667 F.

Supp. 719, 723 (D. Mont. 1987) (finding no private cause of action under 12 U.S.C. § 2609)).  .

### v. Plaintiff's Breach of Fiduciary Duty Claim Fails to State a Claim

Plaintiff's fifth claim for relief is legally deficient.  Plaintiff alleges that "Defendants were

agents of Plaintiff or Defendants were compensated to work for or on behalf of Plaintiff to close

the loan transactions . . . all of which gave rise to a fiduciary duty owed by Defendants to

Plaintiff. . . . "  *See* Compl. at ¶ 26.

Again, notwithstanding that none of the Defendants acted as original lender in this case,

Plaintiff's allegation that Defendants owed Plaintiff a fiduciary duty has no basis in law.

Although the Nevada Supreme Court has not ruled on the issue, this Court and the Ninth Circuit

Court of Appeals have predicted that the Nevada Supreme Court would hold that a lender does

1    not owe a fiduciary duty, as "an arms-length lender-borrower relationship in not fiduciary in

2    nature, absent exceptional circumstances." *Yerington Ford, Inc. v. General Motors Acceptance*

3    *Corp.*, 359 F. Supp. 2d 1075, 1090 (D.Nev. 2004) (*overruled on other grounds sub. nom. Giles v.*

4    *General Motors Acceptance Corp.*, 494 F.3d 865 (2007)).  The decisions in *Yerington Ford* and

5    *Giles* are consistent with numerous holdings in other jurisdictions.  *See Oaks Management Corp.*

6    *v. Sup. Ct. of San Diego County*, 145 Cal.App.4th 453, 466, 51 Cal. Rptr. 561, 570 (2006) ("it is

7    established that, absent special circumstances not present here, a loan transaction is at arms-length

8    and there is no fiduciary relationship between the borrower and lender.") (*citations omitted); AM*

9    *Cosmetics, Inc. v. Solomon*, 67 F.Supp.2d 312, 320 (S.D.N.Y. 1999); *Keys Jeep Eagle, Inc. v.*

10   *Chrysler Corp.*, 897 F. Supp. 1437, 1443 (S.D. Fla. 1995); *G.E. Capital Mortg. Services, Inc. v.*

11   *Pinnacle Mortg.*, 897 F. Supp. 854, 863 (E.D. Pa. 1995) ("Ordinarily, a lender does not owe a

12   fiduciary duty to a borrower."); *Stewart v. Machias Sav. Bank*, 762 A.2d 44, 46 (Me. 2000).

13           Plaintiff's failure and inability to allege exceptional circumstances requiring the

14   imposition of a fiduciary duty supports the dismissal of Plaintiff's fifth cause of action.

15                 vi.        Plaintiff's Negligent and Intentional Misrepresentation Claims Are Not
                              Plead With Requisite Particularity
16

17           Plaintiff's sixth and seventh claims for relief allege that Defendants committed negligent

18   and intentional misrepresentation. These causes of action are dismissed because Plaintiff failed to

     plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).
19

20           "In alleging fraud or mistake, a party must state with particularity the circumstances

21   constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Claims of intentional and negligent

22   misrepresentation must be pled with particularity.  *See Glen Holly Entertainment, Inc. v.*

23   *Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1996) ("It is well established in the Ninth

24   Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

     particularity requirement.").  To satisfy the particularity requirement, the Complaint must plead
25
     with particularity "averments as to the time, the place, the identity of the parties involved, and the
26
     nature of the fraud or mistake."  *Incorp Services, Inc. v. Nevada State Corporate Network, Inc.*,
27
     2008 WL 4527834, 2 (D. Nev. 2008) (*citing Brown v. Kellar*, 97 Nev. 582, 636 P.2d 874 (1981)
28

and *Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995)).

The following allegations comprise the entirety of Plaintiff's intentional misrepresentation/fraud claim:

> Defendants, and each of them, had a duty to represent accurately, truthfully, and completely all the information to Plaintiff in a manner that the Plaintiff actually understood the content of the information so that Plaintiff could make and be responsible for the decision whether to refinance, if so, which loan to use to refinance, and the advantages and disadvantages of the various types of loans. The Defendants, and each of them, intentionally misrepresented the nature of the loans, that the Plaintiff needed a new mortgage, that a new mortgage was suitable for Plaintiff, that a new mortgage was of a sub-prime nature was in Plaintiff's benefit, and other intentional misrepresentations which Plaintiffs relied upon informing their decision regarding the loan transactions. *See* Compl. at ¶ 34.

Plaintiff's negligent misrepresentation claim is based nearly entirely upon the same allegations. *See* Compl. at ¶ 30.

The allegations constituting Plaintiff misrepresentation claims fail to state the time, place, or the identity of the parties involved.  Further, the nature of the fraud pled is, at best, in cursory statements that fall far short of the particularity standard required to survive a motion to dismiss. Plaintiff's sixth and seventh claims for relief are therefore dismissed.

> vii.    Plaintiff Fails To State A Claim For Breach of the Covenant of Good Faith and Fair Dealing

The crux of Plaintiff's breach of the covenant of good faith and fair dealing claim consists of the following allegation:

> Each agreement between Defendants and Plaintiff required that the Defendants deal fairly and in good faith with Plaintiff and not seek to take an undue advantage of Plaintiff in his weakened bargaining position and with his lesser knowledge, skill, education, and ability regarding the loan transactions.

*See* Compl. at ¶ 40.  These allegations do not support a claim for the breach of the covenant of good faith and do not acknowledge the fact that Defendants did not enter into any contracts with Plaintiff.

The implied covenant of good faith and fair dealing is implied in every contract.  *See Hilton v. Butch Lewis Productions, Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 923 (1991); *see also*

1    *A.C. Shaw Construction v. Washoe County*, 105 Nev. 913, 914-15, 784 P.2d 9, 9-10 (1989).  A

2    breach of the covenant occurs "[w]here the terms of a contract are literally complied with but one

3    party to the contract deliberately contravenes the intention and spirit of the contract…"  *Hilton*,

4    107 Nev. at 232, 808 P.2d at 922-23.

5          Plaintiff alleges Defendants took unfair advantage of Plaintiff, but, as explained above,

6    Defendants do not owe Plaintiffs a fiduciary duty to act in Plaintiffs' best interest and never

7    entered into any contractual relationship with Plaintiff.  Plaintiff's claim regarding the alleged

8    breach of the covenant is dismissed as there are no allegations stating how Defendants have

9    contravened the spirit of any contract, and the actual facts of the case show that Defendants have

10   not entered into any contract with Plaintiff.

11                viii.      Plaintiff  has not alleged any basis to set aside the foreclosure sale, and the
                            Wrongful Foreclosure claim is barred because Plaintiff has not tendered
12                          full payment

13         In the ninth claim for relief, Plaintiffs seek an order setting aside the foreclosure sale. *See*

14   Compl. ¶¶ 45-58. The claim fails because (1) Plaintiff provides no basis to set aside the

15   foreclosure; and (2) Plaintiff has not tendered payment of the outstanding sums.

16                1.      *Plaintiff does not allege that the foreclosure sale was conducted
                          improperly*
17

18         Plaintiff's Complaint does not include any allegations that any pending or past foreclosure

19   sale was improperly conducted, and the facts of this case support the claim the Defendants are

20   properly authorized to conduct a foreclosure sale.  The Deed of Trust specifically granted HSBC,

21   as beneficiary, the right to have the Property sold after Plaintiff's default, and NRS 107.080

22   specifically authorizes a trustee to exercise a power of sale. *See* Ex. B; NRS 107.080. After the

23   Plaintiff defaulted, the acting trustee provided the applicable notices and conducted the sale

24   pursuant to such notices. Nevada law presumes that the conveyance of the Property by the trustee

25   to Household perfected title to the Property in Household. See NRS 47.250(17). Additionally,

26   NRS 107.080(5) provides that a trustee's sale "vests in the purchaser the title of the grantor and

27   his successors in interest without equity or right of redemption." A trustee's sale made pursuant to

28   NRS 107.080 may be voided only if the trustee did not substantially comply with such statutory

provisions. NRS 107.080(5)(a).

The Complaint does not include any allegations that even suggest that the Defendants did not substantially comply with the provisions of NRS 107.080. Foreclosure was initiated when the Notice of Default was recorded on September 25, 2008. *See* Ex. E. In compliance with NRS 107.080, a Notice of Trustee's Sale was recorded four months later. *Id.* In the absence of any allegations suggesting that the trustee did not follow the proper statutory procedure, Plaintiff cannot assert any basis to set aside the foreclosure as improper. As Plaintiff has not provided any grounds to rebut the presumption that title was perfected in Household, she is not entitled to set aside the foreclosure.

> 2. *Plaintiff is not entitled to set aside the foreclosure sale because she did not tender payment of all sums*

Plaintiff is not entitled to this equitable relief because she has not alleged that they tendered payment of all Loan amounts that were due under the Deed of Trust. *See generally* Complaint.

An action for the tort of wrongful foreclosure exists only where the mortgagor can establish that he was not in breach of any condition that would have authorized the exercise of the power of sale. Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (1983). Here, Plaintiff has not disputed the fact that she defaulted on their loan payments. *See generally* Complaint.

To contest the validity of a foreclosure action, the borrower must tender the undisputed amount due and payable to the lender on the secured debt. Abdallah v. United Sav. Bank, 51 Cal. Rptr. 2d 286, 292 (Cal. Ct. App. 1996); Karlsen v. Am. Sav. & Loan Ass'n, 92 Cal. Rptr. 851, 854 (Cal. Dist. Ct. App. 1971). If a defaulting borrower seeks equitable judicial relief, the borrower must first "do equity" himself. NOLM, LLC v. County of Clark, 100 P.3d 658, 663 (Nev. 2004); Overhead Door Co. of Reno, Inc. v. Overhead Door Corp., 734 P.2d 1233, 1235 (Nev. 1987). A sale pursuant to a deed of trust "will not be enjoined when it appears by the complainant's own showing that no sale would be made if he should pay what he admits to be due and what he avers his ability and willingness to pay." Meetz v. Mohr, 141 Cal. 667, 673

1   (1904).  If a complaint does not allege a full tender that the plaintiff is actually able to perform,

2   the complaint fails to state a cause of action. See Karlsen, 92 Cal. Rptr. at 853-54.

3        Plaintiff has not alleged that she tendered payment of the outstanding loan amount.

4   Because it appears by Plaintiff's own showing that no foreclosure sale would have been made if

5   they paid the amounts owed under the Loan, Plaintiff is unjustified in seeking the Court's

6   equitable powers to set aside the sale. Accordingly, Plaintiff's request for an order setting aside

7   the sale is rejected and this claim is dismissed.

8        **c.       Plaintiff's Lis Pendens Should Be Expunged**

9        NRS 14.010 states, in part, that in an action effecting the title or possession of real

10  property, the plaintiff shall record with the recorder of the county in which the property is

11  situated, a notice of the pendency of the action, containing the names of the parties, the object of

12  the action and a description of the property. *Id*. 14.010(1).

13       In this case, Plaintiff filed a Notice of Pendency on March 23, 2009, seven (7) days after

14  filing this action with the Court.  Because Defendants' Motion to Dismiss has been granted in

15  full, and Plaintiff's Complaint against Defendants shall be dismissed, there no longer exists "an

16  action affecting title or possession of real property."  The Lis Pendens recorded on the Property is

17  improper and is therefore expunged.

18                              **ORDER**

19       **IT IS ORDERED THAT** Defendants' Motion to Dismiss is **GRANTED IN FULL.**

20       **IT IS FURTHER ORDERED THAT** Plaintiff's Complaint against Defendants be

21  **DISMISSED WITH PREJUDICE**.

22       **IT IS FURTHER ORDERED THAT** any Lis Pendens or Notice of Pendency recorded

23  by the Plaintiff in connection with this lawsuit be expunged, extinguished, and/or released.

24       **IT IS SO ORDERED.**

25

     DATED: July 24th, 2009

26

27

28  .

                                        _____
                                        U.S. DISTRICT COURT JUDGE